## Case No. 15,417.

UNITED STATES v. HUGHES et al.

[12 Blatchf. 553;[1] 7 Chi. Leg. News, 347; 21 Int. Rev. Rec. 211.]

Circuit Court, S. D. New York. June 25, 1875.[2]

PRACTICE—SEIZURE OF BOOKS AND PAPERS—ADMISSIBILITY IN EVIDENCE—CUSTOMS LAWS.

1. The United States sued H. and others, composing a copartnership firm, in the district court, to recover the value of certain imported merchandise, as forfeited for a violation of the customs revenue laws. Prior to the commencement of the suit, the books and papers of the firm were seized, on a warrant issued under section 2 of the act of March 2, 1867 (14 Stat. 547). At the trial, the books and papers so seized were offered in evidence on the part of the United States, and were excluded by the court, on the ground that section 860 of the Revised Statutes provided, that "no discovery or evidence obtained by means of any judicial proceeding, from any party or witness, * * * shall be given in evidence, or in any manner used, against such party or witness, or his property or estate, in any court of the United States, * *. * for the enforcement of any penalty or forfeiture by reason of any act or omission of such party or witness." Held, that the books and papers were improperly excluded.

[Cited in Re Vetterlein, Case No. 16,929; Boyd v. U. S., 116 U. S. 635, 6 Sup. Ct. 535.]

2. The evidence contained in the books and papers was not obtained from the party, within the meaning of the statute.

3. The discovery or evidence contemplated is of a personal nature, to which the party can make oath, and not such as is derived from an examination of his books and papers.

[Error to the district court of the United States for the Southern district of New York.]

This case came up on a writ of error to the district court. The United States brought an action, in that court, to recover from the defendants in error, composing the firm of George Hughes & Company, of New York City, the value of certain importations of merchandise alleged to have been entered at the New York custom house on fraudulent invoices and in violation of the revenue laws. The government, claiming that, by reason of such alleged frauds, the whole value of the importations had been forfeited, under the act of March 3, 1863 (12 Stat. 737), sued, in an action of debt, for $100,000 in gold, the alleged value of such importations. The defendants put in a general denial. The books and papers of the defendants' firm had been seized on the 26th of September, 1873, under a warrant of the said district court, issued under the 2d section of the act of March 2, 1867 (14 Stat. 547). This suit was begun on the 16th of December, 1873. On the 26th of December, 1873, the books and papers so seized were returned to the defendants, under a written stipulation, signed by them, that said books and papers should be pro-

duced at the trial, and that copies of said books and papers might be used in evidence with the like force and effect as the originals. Copies were accordingly made by the plaintiffs while the books and papers were still held under the warrant of seizure, and the copies so made were attached to the stipulation, as exhibits. In accordance with this stipulation, the books and papers were produced in court at the trial, by the defendants. The district attorney thereupon called Thomas A. Smith, one of the defendants, as a witness, and offered to put portions of such books and papers in evidence. To this the counsel for the defendants objected, on the ground that, under section 860 of the Revised Statutes of the United States, the books and papers which had been seized under the warrant were not competent evidence as against the defendants, in this action. The court sustained this objection, and the plaintiffs excepted. [Case No. 15,419.] The plaintiffs' counsel then offered in evidence the copies of said books and papers which were annexed to the stipulation. These were objected to on the same ground by the defendants' counsel, and were excluded by the court. The exclusion was excepted to by the government. The counsel for the plaintiffs then moved, under the act of June 22, 1874 (18 Stat. 187), that the defendants be notified to produce certain books and papers, the district attorney specifying, in his written motion, the particular facts which the government expected to prove by the books and papers so called for. The court granted the motion pro forma, and the notice was duly served on the defendants in open court. [Id. 15,416]. The defendants thereupon declined to produce the books called for, and declined to make any explanation of such refusal, whereupon the plaintiffs' counsel moved that the allegations stated in the written motion be taken as confessed, in accordance with the provisions of the said act of June 22, 1874. The defendants' counsel objected to this motion, on the ground, that the alleged offences were committed, and this suit was begun, prior to the enactment of the statute of 1874, and the provisions of that statute, if applied to this suit, would be void, as being contrary to the provision of the constitution of the United States which prohibits the enactment of ex post facto laws. The court sustained this objection, and denied the motion, to which ruling the plaintiffs' counsel excepted. The district attorney then served upon Mr. Smith, one of the defendants, a subpœna duces tecum, requiring him to produce the books and papers of his firm. The defendant Smith declined to produce them, on the ground, that their production and use in evidence would tend to subject him to the enforcement of the penalties and forfeitures set forth in the declaration. The district attorney, the defendant Smith being on the witness stand, then moved that the witness be compelled to pro-

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Reversing Case No. 15,419.]

duce the books and papers called for by the subpœna duces tecum. The defendants' counsel objected on the ground, that the answer of the witness was sufficient in law, and on the further ground, that the books and papers called for were the same as those which had already been ruled out as incompetent. The court sustained the objection, and the district attorney excepted. The district attorney then offered to prove the contents of the books and papers by the copies annexed to the stipulation as exhibits, to which the defendants' counsel objected, on a ground similar to that taken on the previous objection, and the objection was sustained, and the district attorney excepted. The district attorney then offered to call a witness to prove the contents of the books and papers, said witness, a clerk in the custom house at New York, and employed by the United States, having seen the originals while in the custody of the court under the warrant of seizure, and having, as a clerk in the custom house, and in behalf of the plaintiffs, compared the copies heretofore mentioned with the originals, while the latter were in the custody of the court under the warrant. This proposed evidence was objected to, on the part of the defendants, on the ground that the secondary evidence was incompetent for the same reason which made the primary evidence incompetent. This objection was sustained, and the district attorney excepted. Thereupon a verdict was rendered for the defendants, by direction of the court.

Thomas Simons, Asst. U. S. Dist. Atty.

Sherburne B. Eaton, for defendants in error.

HUNT, Circuit Justice. This action was brought to recover from the defendants certain penalties for violation of the revenue laws of the United States. Before the trial, the collector of the port of New York had taken the proceedings authorized by the act of March 2, 1867 (14 Stat. 547), and had seized certain books and papers, which, it was alleged, contained entries that would sustain the action. The offer of the government to give in evidence these books and papers on the trial, was overruled by the judge, and the correctness of this ruling is the principal question in the case.

The legislation of congress on this subject, of the seizure of books and papers, may be briefly stated as follows: By the act of March 3, 1863 (12 Stat. 740), it was provided, that, upon an affidavit showing, to the satisfaction of the district judge, that a fraud upon the revenue had been committed or attempted by any person, such judge should issue his warrant to the collector of the port, directing him to enter the premises where any papers relating to the importation were deposited, seize and carry away the same for inspection, and retain them as long as was thought necessary by the solicitor of the treasury. The act of July 18, 1866 (14 Stat. 187, § 39), among the provisions by which a general revision of the law relative to smuggling was made, contained a provision authorizing any district judge to issue his warrant for the seizure of such books and papers, to any collector in whose district such books or papers might be thought to be. On the 25th of February, 1868 (15 Stat. 37), was passed the act relied upon as furnishing the ground for the exclusion of the books and papers on the present trial. It is entitled "An act for the protection, in certain cases, of persons making disclosures as parties, or testifying as witnesses," and is as follows: "Be it enacted, &c., that no answer or other pleading of any party, and no discovery or evidence obtained by means of any judicial proceeding, from any party or witness in this or any foreign country, shall be given in evidence, or in any manner used, against such party or witness, or his property or estate, in any court of the United States, or in any proceeding by or before any officer of the United States, in respect to any crime, or for the enforcement of any penalty or forfeiture, by reason of any act or omission of such party or witness: provided, that nothing in this act shall be construed to exempt any party or witness from prosecution or punishment for perjury committed by him in discovering or testifying as aforesaid." This provision was afterwards, in the same language, incorporated into the Revised Statutes of the United States (section 860).

The argument of the defendants is this: 1st. This is a suit for the enforcement of penalties against the defendants; 2d. Their books were offered to be "given in evidence" against them; 3d. The evidence contained in the books had been obtained from them by "means of a judicial proceeding." No serious contention is made against the position, that this suit, for the enforcement of a penalty for violation of the revenue laws, is within the view of the act. It is plain, also, that the books were offered to be given in evidence against the parties to the suit. The question is—was the evidence offered "obtained from the party," within the meaning of the statute? Is the evidence which the statute intends to exclude, any other than that obtained from the personal testimony of a party or a witness?

1. It will be observed, that the act of 1868, is not, and does not purport to be, an amendment of the act of 1863, or of that of 1866. The existence of that circumstance would tend greatly to connect it with those statutes, and give an application of its language, that it would not otherwise possess. It is, however, independent of those statutes, is disconnected from them, and is put forth as providing a general rule or principle of evidence.

2. The title and the marginal reading make it applicable to the case of personal testimony only. The title is the work of the legislature as much as the body of the act, and, while it

may not contradict or overrule the body, its language, in a doubtful case, is entitled to great consideration. "An act * * * for the protection of persons making disclosures, as parties, or testifying as witnesses." Any person who, as a party, shall make a disclosure under oath, or any person, (whether party or not,) who shall testify as a witness, shall be protected. No intention to protect books and papers from being given in evidence can be understood from this language. It relates to personal evidence only. The marginal reading is still more explicit. It is in these words: "The testimony of a witness, or the disclosure of a party, in judicial proceedings, not to be used against him in criminal cases, in United States courts." This language plainly excludes the case of books and papers obtained under a warrant issued by the judge. The "testimony of a witness," or the "disclosure of a party," does not include the case of books and papers obtained without such testimony or disclosure. The statute of 1868 is incorporated, without alteration, into the Revised Statutes, and, in the margin of the latter, is a reference to the former statute. The adoption of the old statute, accompanied by this marginal exposition, into the Revision, without change of language, entitles the marginal reading to more consideration than it would ordinarily possess.

3. A critical examination of the language of the statute of 1868, tends to the same conclusion. The answer or other pleading of a party, it is provided, shall not be given in evidence against him. This expression relates to the pleadings in a suit, and, probably, would be held to include nothing else. The answer or pleading referred to was usually given as a response to a bill of discovery, to which the party was compelled to reply, and by means of which he furnished evidence to his opponent, to enable him to sustain or to defend a civil suit. While this means of sustaining pecuniary claims is retained by the act of congress, in accordance with the general rule of law, care is, at the same time, taken not to interfere with that other rule of law, which protects a man from giving an answer which will subject him to a criminal prosecution or to a penalty. To insure this protection, the provision in question is made for the courts of the United States. It was, however, well known, that there are other modes of proceeding of a judicial character, in addition to pleadings in a suit, by which a party could be compelled to make disclosures, on oath, touching his business or property. Nearly every state has its own mode of compelling a debtor to submit to a personal examination, and to make discovery of his affairs. The "evidence" or "discovery" thus obtained by the examination of the party, is ordinarily competent evidence against him. It is, also, at this time, the rule in the United States courts, that a party to a suit may be called as a witness in that suit. What he then states, as a witness and as a party, is

evidence against him, and of the highest character. By the statutes of June 30, 1864 (13 Stat. 226, § 14), and July 13, 1866 (14 Stat. 101, § 9), congress had bestowed upon numerous government officials engaged in the collection of internal taxes, the power to summon before them, and examine, parties under oath, as to their property. In some cases, the witnesses had claimed exemption from testifying, on the ground that their evidence would subject them to a penalty. Lippman's Case [Case No. 8,382] These, among others, are cases where the discovery or evidence may be obtained "from the party or witness." It comes directly from the party or the witness. It may be used against him, in the United States courts, at all times and on all occasions, except in the case of a criminal prosecution against him, or in the case of a suit to enforce a penalty or forfeiture.

The case before us is of quite a different character. No "answer or other pleading" has been given. The party has not been sworn, nor has he testified. No "evidence" "has been obtained from the party." No "discovery" has been made by him. He has been perfectly silent. He has disclosed nothing. He has discovered nothing. His invoices have been seized, and have been offered to the court, but they are not the evidence or discovery referred to in the statute. The statute speaks of evidence or discovery obtained from the party or witness, and not that obtained from invoices and bills of lading which have been wrested from him. If one should be arrested for burglary, evidence that tools suitable for the commission of that offence were found upon his person may be given in evidence on his trial. Upon a trial for counterfeiting the coin of the country, proof that spurious coin, similar to that which was passed, had been found upon the person of the prisoner, or had been passed by him at other times, would be competent evidence to prove him guilty of the offence charged. This would be evidence derived from circumstances, from the tools and from the coin, not a discovery or evidence from or by the party. So, if books and papers contain entries tending to show an offence against the revenue laws of the country, they are competent evidence on a trial of the party, not as a discovery or evidence obtained from the party, but as facts and circumstances—facts or circumstances quite independent of the action of the party in making evidence or discovery, quite in opposition, indeed, to his wish or intention in that respect.

4. The proviso of the statute of 1868, is in harmony with the view taken of the proper construction to be given to it: "Provided, that nothing in this act shall be construed to exempt any party or witness from prosecution or punishment for perjury committed by him in discovering or testifying as aforesaid." The discovery or evidence expected to be given by the party was of a personal nature, to which he could make oath. The statute

contemplated a case where he should make discovery, or give evidence, in such form that he could swear to the truth of his statements, that those statements should not be given in evidence against him, when prosecuted criminally or for a penalty, but that, if he testified or made discovery upon oath falsely, he should suffer the punishment due to a perjurer.

The case of the internal evidence derived from the contents of books and papers seized upon judicial authority is quite different from this. It is not the "discovering or testifying as aforesaid" contemplated by the statute.

It can hardly be doubted that this evidence would be competent, except for the provision in question. Such was the opinion of the learned judge who tried the cause, and such was the holding in Stockwell v. U. S. [Case No. 13,466]. Although that case was decided after the passage of the act of 1868, that act was not alluded to. It probably escaped the attention of the counsel and the court. On the appeal to the supreme court, the case was decided upon other points. 13 Wall. [80 U. S.] 531.

In my judgment, there is abundant aliment for all the language of the statute of 1868, without applying it to a case like the present, which, I think, is not within its intent, nor necessarily within its words.

For the error in excluding the evidence to be derived from the books and papers, the judgment must be reversed, and a new trial had.